**EDWARD HINES WESTERN PINE CO. v.
. FIRST NAT. BANK OF CHICAGO et al.**

No. 9212.

District Court, N. D. Illinois, E. D.

Feb. 24, 1931.

558

W. B. Angelo, of Chicago, Ill., for plaintiff Edward Hines Western Pine Co.

John N. Ott, C. Edward Dahlin, and Homer J. Livingston, all of Chicago, Ill., for defendant First Nat. Bank of Chicago.

Sidney Teiser, of Portland, Or., and Kirkland, Fleming, Green & Martin, of Chicago, Ill., for defendant J. D. Meikle, trustee of Fred Herrick Lumber Co.

WILKERSON, District Judge.

This transaction in question, in the opinion of the court, must be held invalid under that portion of section 67e of the Bankruptcy Act 1898, as amended (11 USCA, § 107(e), which provides: "All conveyances, transfers, assignments, or incumbrances of his property or any part thereof, made or given by a person adjudged a bankrupt under the provisions of this title within four months prior to the filing of the petition, with the intent and purpose on his part to hinder, delay, or defraud his creditors, or any of them, shall be null and void as against the creditors of such debtor, except as to purchasers in good faith and for a present fair consideration. * * * "

■ The Herrick Lumber Company was insolvent at the time of the transaction. The Milwaukee Lumber Company and the Ex-port Lumber Company had valid claims against it for the moneys diverted through Herrick from them to the Herrick Lumber Company. The contention that the Herrick Lumber Company is not to be charged with Herrick's knowledge as to the source of the money cannot be accepted. The rule which would enable the Herrick Lumber Company to receive through its president this money which he had taken wrongfully from other companies controlled by him and obtain the benefit of the use of the money without being chargeable with the president's knowledge as to real ownership of the funds so diverted is repugnant to equity. Moreover, aside from the president's knowledge, the real character of the transactions with the Milwaukee and Export Companies was brought home to the Herrick Lumber Company by circumstances which put it on inquiry and precluded it from closing its eyes and saying that it did not know what could easily have been found out.

■ If the claims of the Milwaukee and Export Companies are valid, the Herrick Lumber Company was admittedly insolvent, and, upon the record, it must be held that the transfer of the $125,000 to the First National Bank was made with intent to hinder, delay, and defraud the creditors of the Herrick Lumber Company. Dean v. Davis, Trustee, 242 U. S. 438, 444, 37 S. Ct. 130, 61 L. Ed. 419.

It cannot be held, on this record, that the transaction with the First National Bank was in good faith and for a present fair consideration. Quite independent of the question of duress, it is perfectly clear that the transaction with the bank was more than the mere purchase of the notes of the Cœur d'Alene Mill Company. Herrick was a guarantor of the notes. The bank gave notice that it intended to proceed against Herrick in bankruptcy. Inextricably interwoven as a part of the consideration for the deal was the protection of Herrick. It is impossible to determine how much of the $125,000 was paid for the Cœur d'Alene notes and how much for the benefit which was to accrue to Herrick. Benefit to Herrick was not a proper consideration, under the circumstances, for the transfer of the property of the Herrick Lumber Company. It cannot be said, therefore, that the purchase of the notes was a good-faith transaction and for a fair consideration.

■■ The court is of the opinion that the objection of ultra vires is well taken. The charter of the Herrick Lumber Company states definitely the purpose for which it is

organized as follows: "The enterprise, business or pursuit for which this corporation is formed, is for the purpose of engaging in the general lumber, timber, milling and allied interests, together with the building of such railroads, logging roads and other things necessary in the full and complete operation thereof."

The laws of Oregon (Code Or. 1930, § 25-208) provide that, upon the filing of the articles of incorporation, the incorporators are "authorized to carry into effect the objects specified in the articles, * * * with power * * * to purchase, possess, and dispose of such real and personal property as may be necessary and convenient to carry into effect the objects of the incorporation."

To be sure, the articles of incorporation of the Herrick Lumber Company, after stating the purpose for which the corporation is organized, contain an elaborate enumeration of the powers which it is asserted the corporation can exercise. This enumeration of powers, however, must be read in connection with the statutes and the statement of corporate purpose in the articles of incorporation. It is not an amplification of the purpose for which the corporation is organized. It is an enumeration of powers to be exercised when they are "necessary and convenient to carry into effect the objects of the incorporation."

Protecting Herrick was not germane to the purpose for which the Herrick Lumber Company was organized. Diversions of corporate funds for the benefit of an officer of the corporation are generally held to be ultra vires. The transaction must be held to be beyond the charter powers of the Herrick Lumber Company.

The trust fund rule, which it is claimed is the law of Oregon, is invoked by the trustee. That rule, however, unaided by the bankruptcy statute, above cited and applied, and the doctrine of ultra vires, does not assist the trustee. If the transaction with the bank was within the power of the Herrick Company, it cannot be said that the company at the time of the transaction had ceased to do business. There is much uncertainty about this trust fund doctrine, and, standing alone, it is not sufficient to sustain a finding in favor of the trustee.

As to the other points relied on by the trustee, the findings on the facts and the law are in favor of the bank. As between the bank and the Herrick Company, the intention of the parties is clear; and, but for the objections of fraud and ultra vires, there would have been an equitable assignment of the fund.

The bank did not waive any of its rights by the institution of either the attachment or the assumpsit suit. For the reasons above stated, the fund on deposit with the clerk should be turned over to the trustee.